UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES PRATT, CARLA MURRAY, and ERIK GRIFFIN, <br><br>  Plaintiffs, <br><br> v. <br><br> THE ILLINOIS DEPARTMENT OF CORRECTIONS and TERRY MCCANN, Individually, <br><br>  Defendants. | Case No. 06-cv-847-JPG |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on defendants' motion to dismiss (Doc. 4). The plaintiffs have responded to the motion (Doc. 8). For the following reasons, defendants' motion will be **DENIED**.

**BACKGROUND**

James Pratt, Carla Murray, and Erik Griffin are current and former Illinois Department of Corrections (IDOC) employees, who, during the period relevant here, worked as correctional officers at the Shawnee Correctional Center, an IDOC prison. Pratt, Murray, and Griffin are black. They allege that during their "entire tenure at Shawnee . . . they were subjected to a racially hostile work environment and racial discrimination which included but was not limited to pervasive racially derogatory and offensive remarks." (Compl. at 3).

**I.     Pratt**

On June 30, 2003, Pratt told his superior officer that he witnessed a white officer, Herbert L. Garris, use excessive force against an inmate. Pratt's report spawned an investigation by the

Illinois State Police, Division of Internal Investigation. Once the investigation began, Pratt's superiors and white coworkers asked him to change his testimony. When Pratt refused, the white officers increased the frequency of their discrimination and began retaliating against him. They did not retaliate against white officers that similarly refused to change their testimony. Shawnee discharged Garris as a result of the conduct Pratt reported.

After receiving threats from Garris and other white officers, Pratt wrote a letter of complaint to Shawnee's Chief of Staff, Dennis R. Cooper. Cooper "acknowledged Pratt's concerns of harassment," but did nothing. (Compl. at 4). Defendant Terry McCann, the warden at Shawnee, retaliated against Pratt by transferring him to different IDOC prisons. After Pratt had surgery on his knee in September 2005, his superiors denied him light duty work. When white officers were hurt on the job, their supervisors assigned them light duty work. Because his superiors refused to assign him light work, Pratt had to quit his job.

**II.    Murray**

Sometime in 2003, Murray applied for a "Corrections Clerk II position." The only black applicant, Murray was the eighth person on the eight-person list of applicants. Shawnee staff advised her by a memo dated October 2, 2003, that "she was next in line to fill the Corrections Clerk II position for 70 days, beginning October 20, 2003." (Compl. at 5). On October 17, 2003, however, she received another letter stating that the position had been terminated. Shawnee denied her the position because she is black. The seven other officers, all white, received the position.

Murray filed a claim of sexual harassment, sex discrimination, and retaliation on October

2

30, 2002.[1]  After she filed her complaint, staff at Shawnee started retaliating against her.  Among other things, her supervisors brought her before the Employee Review Board (ERB) for "leaving a mandated overtime shift early and abandoning her post."  (Compl. at 5).  White employees were not, as Murray was, required to continue working after they completed their mandatory overtime.  Though the ERB recommended a written reprimand, McCann overrode the decision and gave her a three-day suspension.  McCann did not have this authority.  McCann did not suspend white employees who acted as Murray did.   Murray's supervisors also denied her and other black employees' requests for "turn-arounds and half shifts when posts were sufficiently covered for the shift."  (Compl. at 6).

### III.   Griffin

Griffin witnessed (and was offended when) white correctional officers, including Roy Neely and Kelly Parker, refer to black inmates as "boy " and interracial inmates as "half-breeds" or "breeds." (Compl. at 6-7).  In January 2004, Griffin applied for a "Correctional Counselor I & II" position in the Clinical Services Department.  Though Griffin has a bachelor's degree, thirty hours of credit toward his Master's, and had received an A on his official competitive promotional examination (OCPE), Shawnee officials chose "a significantly less qualified white officer" for at least one of the jobs.  (Compl. at 7).  Shawnee officials denied Griffin the job because he is black.

On May 24, 2004, Griffin complained to McCann of the racism at the prison and told him he felt he was denied the position because he is black.  In response, McCann said, "I don't believe racism exists and it is just an excuse." (Compl. at 7).  Griffin filed an incident report

---

[1] Given the chronological flow of the complaint, the Court suspects that counsel meant to state October 30, 2003.

regarding this comment on July 15, 2004. IDOC did not investigate Griffin's report.

On September 8, 2004, the Illinois Youth Center (IYC) offered Griffin a position. Griffin could not begin working for IYC, however, before it reviewed his employment record at Shawnee. Shawnee refused to release the records, claiming it would not do so unless he "resign[ed] for other reasons than discrimination and retaliation." (Compl. at 8). Because Griffin tendered a "generalized resignation," Shawnee staff significantly delayed the release of his records. This delay kept Griffin from beginning with IYC until January 2005. Shawnee's refusal to release the records was retaliation for his complaints of racism.

Based on the foregoing, plaintiffs collectively set forth two counts in their complaint: Count I titled, "Racial Discrimination and Retaliation Against Plaintiffs by IDOC in Violation of Title VII" and Count II, titled "Section 1981 Violation by Terry McCann Against Plaintiffs."

Defendants raise three principal grounds in support of their motion to dismiss. First, they request dismissal of the entire complaint for plaintiffs' failure to follow Federal Rule of Civil Procedure 10(b), which requires plaintiffs to state each claim in a separate count. Second, defendants contend that the Eleventh Amendment bars plaintiffs' 42 U.S.C. § 1981 claims. Third, defendants contend that plaintiffs' retaliation claims are not cognizable under Title VII.

## ANALYSIS

### I.   Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005); *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000). The Court will not grant a motion to dismiss unless it appears beyond doubt that plaintiffs cannot prove their claims under any set of facts consistent with the complaint.

*McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 428 (7th Cir. 2005).  Similarly, it will not grant a motion to dismiss because the complaint is vague or lacking in detail, so long as it pleads "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002).

II.     **10(b) Claims**

Defendants request dismissal of the complaint pursuant to Federal Rule of Civil Procedure 10(b).  This Rule provides as follows:

> All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Plaintiffs have plainly failed to comply with the terms of Rule 10.  While their allegations of pervasive racism are the same, the specific acts of discrimination and retaliation of which they complain take different forms.  As such, their claims are founded on separate transactions and occurrences.  In addition, plaintiffs have lumped together their discrimination and retaliation claims together in the same count.  Separating these claims into distinct counts will benefit the parties and the Court.  Rather than dismissing the complaint outright, the Court orders the plaintiffs to amend their complaint to comply with the requirements of Rule 10(b).  *See generally* 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶10.03 (3d ed.).

III.    **Section 1981 Claims**

Plaintiffs have brought discrimination claims against McCann under 42 U.S.C. § 1981.  This section "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 126

S.Ct. 1246, 1249 (2006) (internal quotation marks omitted).  The right to make and enforce contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

For reasons unknown, IDOC thinks plaintiffs named it as a party to their § 1981 claims.  They did not.  Without citation to relevant authority, McCann contends plaintiffs' § 1981 claims against him are actually against the state, and thus barred by the Eleventh Amendment.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest.") (internal quotations marks omitted).  In his words, a judgment against him "would, in effect, control the State's employment practices."  (Doc. 4 at 8).

McCann's argument is without merit.  Plaintiffs name McCann in his personal capacity and specifically allege he impermissibly discriminated against them based on their race.  In cases such as this, both the Supreme Court and the Seventh Circuit have consistently held that a plaintiff can recover damages against a defendant in his personal capacity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001) ("The general rule is that such suits are not barred by the [Eleventh] amendment, because the plaintiff is seeking damages from individuals rather than from the state treasury."); *Sterling v. United States*, 85 F.3d 1225, 1228-29 (7th Cir. 1996); *MSA Realty Corp. v. Ill.*, 990 F.2d 288, 291 (7th Cir. 1993); *Hill v. Shelander*, 924 F.2d 1370, 1372-73 (7th Cir. 1991); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908) ("If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his

official or representative character and is subjected in his person to the consequences of his individual conduct.").

Cases like *Luder v. Endicott* demonstrate that a suit nominally against a defendant in his personal capacity can really be an action against the state. 253 F.3d at 1023. *Luder* held:

> [A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act. Indirect effects are not enough; otherwise the practical necessity for a state to compensate an employee for bearing liability risks would place individual-capacity suits under the bar of the Eleventh Amendment. But a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is, we think, barred. Any other position would be completely unrealistic and would make a mockery of the Supreme Court's heightened sensitivity to state prerogatives.

*Id*. (internal quotation marks and citations omitted). As counsel should know, however, "a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state" is rare. Otherwise, prisoner civil suits would not clog the courts as they do. Counsel has failed to cite *Luder* or any case applying its holding in circumstances similar to the case at bar. The only thing about which counsel is correct is that a judgment against McCann might have some effect on the State's employment practices; to the extent it is not already clear, it would make clear that racial discrimination is not allowed. Counsel does not indicate why she thinks this a bad thing.

**IV.   Title VII Retaliation Claims**

The Court finds defendants' arguments on plaintiffs' Title VII retaliation claims unpersuasive. Title VII's anti-retaliation provision forbids an employer from "discriminat[ing] against" an employee because the employee "opposed any practice" made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42

U.S.C. § 2000e-3(a). The Seventh Circuit has not specifically addressed whether informal complaints, like the ones made by Pratt and Griffin here, constitute protected activity for purposes of a Title VII retaliation case. *Kodl v. Bd. of Educ.*, No. 05-C-3837, 2006 WL 2192014, at *14 (N.D. Ill. Aug. 1, 2006) (citing *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004)); *but see Laird v. Cragin Fed. Bank*, 41 F.3d 1510, 1994 WL 609920, at *6 (7th Cir. 1994) ("Informal complaints to supervisors can constitute protected activity.") (unpublished opinion). As noted in *Kodl*, however, several Circuit Courts, and a number of district courts in this Circuit, have held that informal complaints *can* constitute protected activity. *Watson v. ABT Elecs., Inc.*, No. 06-C-1815, 2007 WL 79327, at *3 (N.D. Ill. Jan. 8, 2007) ("All circuits, along with our district court, to decide the issue have determined that informal complaints still constitute protected activity for the purposes of a retaliation claim."); *see, e.g., Baqir v. Principi,* 434 F.3d 733, 748 (4th Cir. 2006); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000); *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir.1992); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011-12 (11th Cir.1989); *Kruger v. Principi*, 420 F.Supp.2d 896, 910 (N.D. Ill. 2006) ("Informal complaints to supervisors may constitute protected activity."); *Jones-Walsh v. Town of Cicero*, No. 04-C-6029, 2005 WL 2293671, at *5 (N.D. Ill. Sept. 14, 2005); *Walls v. Turano Baking Co.*, 221 F.Supp.2d 924, 931 (N.D. Ill. 1998).

Counsel for defendants simply assumes that informal complaints do not constitute protected activity under Title VII. She cites to no cases holding as much, and fails to recognize that the Circuit Courts that have addressed the issue have held otherwise. Right or wrong, the Court will not accept this contention without citation and some discussion of why the courts of appeal and a number of judges in the Northern District are patently wrong. In any event,

because defendants' arguments are perfunctory, underdeveloped and unsupported, they are waived. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

In the context of formal complaints, a plaintiff need only hold "a sincere and reasonable belief" that he is opposing an unlawful activity and indicate a prohibited basis for the complained of discrimination to engage in protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663-64 (7th Cir. 2006); *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003) ("Title VII protects an employee from retaliation for complaining about the types of discrimination it prohibits."); *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706-07 (7th Cir. 2000); *Miller v. Am. Family Mutual Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997); *Dey v. Colt Const. & Dev.Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).

Here, Pratt complained to Shawnee's chief of staff because his coworkers and superiors harassed him because of his race. After he complained, McCann transferred him to another prison. Involuntary transfers can be "tangible employment actions" sufficient to give rise to a claim under Title VII. *Sitar v. Ind. Dep't. of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003); *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). This is sufficient.

Griffin complained about racism to McCann. As a result, Shawnee staff refused to provide him with copies of his employment records, causing him significant delays in starting his new job. While Griffin's claims are not as strong, defendants have failed to cite sufficient authority or make sufficient arguments to merit dismissal of the claim. *See Spath*, 211 F.3d at 397; 207 F.3d at 382; *see also Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir. 1990).

## **CONCLUSION**

Defendants' motion to dismiss (Doc. 4) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: May 3, 2007**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**