UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES PRATT, CARLA MURRAY, and
ERIC GRIFFIN,

        Plaintiffs,

  v.

ILLINOIS DEPARTMENT OF
CORRECTIONS and TERRY MCCANN,
individually,

        Defendants.

Case No. 06-cv-847-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Illinois Department of Corrections (IDOC) as to the claims made by Plaintiff Eric Griffin (Griffin)(Doc. 31)[1]. Griffin has responded to the motion (Doc. 37) and IDOC has replied to that response (Doc. 48). Griffin alleges that IDOC, his former employer, is liable under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, for racial discrimination and for retaliation.[2] IDOC contends that two of Griffin's claims are time barred and that Griffin cannot

---

[1] IDOC filed three separate summary judgment motions in this case, one addressed to each Plaintiff's claims. In ruling on each of the motions, the Court has been careful to confine its consideration to the evidence presented in connection with that particular motion and not to other evidence presented in connection with the other two motions, even if such evidence would have been relevant to the motion at hand. To the extent that the Court's rulings are inconsistent, that inconsistency is a product of the different evidence presented by the parties in connection with each motion and not by an improper application of the law.

[2] The Court construes this case as not asserting a "pattern-or-practice" Title VII cause of action. Although the Plaintiff's response to the summary judgment motion referred in passing to a "pattern-or-practice" theory, it analyzes this case as if it asserted only individual claims, confirming that he does not intend to assert such a claim.

establish a case for racial discrimination or for retaliation. For the following reasons, the Court **GRANTS** the Motion.

## BACKGROUND

**I.      Standard for Summary Judgment**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996). The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris, Inc.,* 216 F.3d 596 (7th Cir. 2000). Mere assertions of a factual dispute unsupported by probative evidence will not

prevent summary judgment. *Anderson,* 477 U.S. at 248-250.

**II.    Facts**

Taken in the light most favorable to Griffin, the evidence establishes the following facts.

**A.    IDOC's Racial Discrimination Policy**

Griffin, an African American , worked as a corrections officer (CO) at Shawnee Correctional Center (Shawnee), a medium security State facility operated and maintained by IDOC in Massac County, Illinois. At all relevant times, IDOC had a written policy regarding racial discrimination and retaliation, Administrative Directive (A.D.) 03.01.307. As of March 1, 2000, that policy prohibited discrimination or harassment based on a person's race or color. It defined harassment as:

> verbal or physical conduct that denigrates or shows hostility or aversion toward an individual . . . because of race. . ., and that has the purpose or effect of:
> 1.    Creating an intimidating, hostile, or offensive working environment;
> 2.    Unreasonably interfering with an individual's work performance; or
> 3.    Otherwise adversely affecting an individual's employment opportunities.

A.D. 03.01.037 § II.E. The policy applied to the treatment of both employees and prisoners of the facility. The policy forbid engaging in or condoning racial discrimination or harassment, and obligated supervisors to "address[] any observed or reported incident of discrimination or harassment as a serious form of employee misconduct." *Id*. at § II.G.3. It also required an employee who witnessed or was aware of discriminatory or harassing behavior to report it in an incident report. *Id*. at § II.H.3. Wardens at Shawnee were required to work within the policy's guidelines. Additionally, Wardens were instructed to contact the Office of Affirmative Action if they ever became aware of racial harassment issues.

3

**B.     Griffin's Employment**

Griffin worked as a CO at Shawnee from August 2000 through October 2004. Sometime prior to January 16, 2004, Griffin applied for the positions of Correctional Counselor I and Correctional Counselor II. Griffin met the qualification requirements of both positions. Nonetheless, Griffin learned on January 16, 2004, that he was not selected for promotion to the Corrections Counselor I or II positions; the positions instead went to white applicants. On April 6, 2004, Griffin began a leave of absence. He never returned to work at Shawnee. Griffin's leave of absence ended August 4, 2004. Thereafter he was considered absent without authorization in violation of IDOC's attendance policy. In October 2004, IDOC terminated Griffin's employment. Griffin's union grieved his termination, and on October 27, 2004, the parties agreed that Griffin would be allowed to resign effective November 25, 2004. Griffin agreed not to seek or accept re-employment IDOC at any time. Upon receipt of Griffin's written resignation, IDOC would purge Griffin's employment record of any mention of discharge. On November 24, 2004, Griffin sent his written resignation to Shawnee.

In the meantime, Griffin had applied for a position with a contractor providing counseling services at the Illinois Youth Center in Harrisburg (IYC - Harrisburg). Before Griffin could formally be offered the position, he had to pass a background check which included a review of Griffin's employment records with IDOC. Sometime prior to December 3, 2004, Griffin was informed that his application to work for IYC - Harrisburg had been denied. On December 3, 2004, Griffin wrote to Brad Curry (Curry), the acting manager of IDOC's Background Investigations Unit, requesting information as to why his application was not approved. Curry wrote in reply on December 6, 2004, that a review of Griffin's IDOC personnel

4

file had resulted in a recommendation that Griffin not be considered for employment. On December 9, 2004, Griffin informed Curry that he had resigned from Shawnee; he had not been discharged. Griffin asked Curry to consider this new information. On January 28, 2005, an IDOC employee wrote an email questioning whether employment with the contractor at IYC - Harrisburg would violate Griffin's agreement not to seek or accept re-employment with IDOC. On January 31, 2005, it was determined that such employment would not violate the agreement. IDOC reexamined Griffin's personnel files, and he was approved to work at IYC - Harrisburg on February 1, 2005. Griffin began work there in late February 2005.

During his tenure at Shawnee, Griffin personally heard at least two white COs refer to African-American inmates as "boy" and refer to light-skinned African-American inmates as "half-breeds" or "breeds." Additionally, Griffin observed that Randall Adams, vice president of the union which represented Griffin at Shawnee, and his wife, Billy Adams, a CO at Shawnee, had state-issued licence plates reading "W Pride 1," "3KMan," and "3KWoman." The Secretary of State's office determined that the plates were racially offensive and revoked them However, IDOC never disciplined the Adamses for having or displaying the plates, even though IDOC was aware that some employees had complained about them. Griffin did not report any racially offensive conditions until after the last day he physically worked at Shawnee.

On July 15, 2004, Griffin wrote an incident report complaining generally of a racially hostile environment at Shawnee. Warden McCann (McCann) forwarded the incident report to the Office of Affirmative Action. Griffin did not respond to requests for more information from the Office of Affirmative Action. Warden McCann also asked Warden Jason Garnett, an African-American warden at a different IDOC facility and an acquaintance of Griffin's, to speak

5

with Griffin about his racial harassment concerns.

Griffin filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on April 13, 2005. He has exhausted all administrative remedies, and brought the instant suit within 90 days of receiving his right to sue letter from the EEOC.

## ANALYSIS[3]

Title VII prohibits discrimination on the basis of race: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race . . . ." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against an employee who files an employment discrimination complaint. "It is also an unlawful employment action for an employer to discriminate against any of his employees. . . because [the employee] has opposed any practice made an unlawful employment practice by this [subchapter], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this [subchapter]." 42 U.S.C.A. § 2000e-3(a). Claims must be filed in an EEOC complaint within 300 days of the act complained of in order to be actionable under Title VII. 29 C.F.R. §

---

[3]Plaintiff's counsel seems to be under the impression that the Court is familiar with the background, history, facts and relevant law of this case. Counsel has neglected to appraise the Court of basic facts, and has misconstrued a number of facts. Moreover, counsel has failed to apply the facts of the case to the law she has cited. The Court must, once again, remind counsel that it is not its job to do counsel's work of organizing or formulating a party's arguments, *United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999), nor is it the Court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F. 3d 560, 562 (7th Cir. 1996). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

160.13; *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Griffin has presented three claims: 1) he was denied promotion to the positions of Correctional Counselor I and II because of his race; 2) because of his race, Griffin was subjected to a work environment that was so hostile that it altered the conditions of his employment; 3) IDOC failed to properly update Griffin's personnel file in a timely manner, thereby preventing his obtaining other employment, in retaliation for his July 15, 2004 incident report alleging a racist environment at Shawnee. The Court will examine each of the claims in turn.

## I.     Failure to Promote

Griffin learned that he had been denied promotion to the Corrections Counselor I and II positions in January of 2004. On April 13, 2005, he first filed a complaint with the EEOC. Claims must be filed with the EEOC within 300 days of the act complained of in order to be actionable under Title VII. 29 C.F.R. § 160.13; *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Griffin's complaint was nearly five months too late; his claim is therefore not timely, and he is barred from bringing it in this action.

Griffin counters that the refusal of IDOC to promote him was not a "discrete act" actionable on its own, but must instead be considered as part of "a series of separate acts that collectively constitute one 'unlawful employment practice'" and so is not barred under the *Morgan* doctrine. He gives the Court no indication of what the other acts in this "series" might be. At any rate, it is clear that a failure to promote is actionable in and of itself, thus beginning the 300 day time period. *Morgan,* 536 U.S. 101, 114 (2002). Griffin did not meet the 300 day deadline, therefore, IDOC is entitled to summary judgment on Griffin's failure to promote claims.

7

## II. Hostile Work Environment

Griffin also claims that he suffered racial discrimination in the form of a hostile work environment in violation of Title VII.

> To survive a summary-judgment motion, an employee alleging racial harassment must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.

*Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

A hostile work environment claim is composed of a series of separate acts that are not actionable standing alone, but that collectively constitute one "unlawful employment practice." *Morgan*, 536 U.S. at 117. So long as some act contributing to the hostile environment claim occurs within 300 days of filing the complaint with the EEOC, the claim is timely. *Id*. at 118.

The acts constituting the hostile environment to which Griffin was subjected all occurred outside of the 300 day filing period, and are, therefore, not timely. Griffin last reported to work at Shawnee in early April 2004. By April 6, 2004 he had begun a leave of absence from which he would not return. Griffin alleges no incidents constituting part of his hostile environment claim occurring after the time his leave of absence began. Because his leave of absence marked the end of his being subjected to a hostile environment, in order to pursue this claim Griffin would have had to have filed his EEOC complaint prior to February 2005. He did not. Therefore, his hostile environment claim is not actionable, and IDOC is entitled to summary judgment on that claim.

## III. Retaliation Claim

Griffin alleges that IDOC failed to timely update his personnel file to indicate that he had

resigned his position rather than been terminated from it. He claims IDOC did so to prevent him from obtaining employment with an independent contractor at IYC -Harrisburg in retaliation for Griffin's filing an incident report alleging a racially hostile work environment.

An employer is prohibited by Title VII from discriminating against any employee "because he has opposed any practice made an unlawful employment practice" by the statute. 42 U.S.C. § 2000e-3(a). The plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If he is successful in establishing a prima facie case, he establishes a presumption of discrimination. *Id*. At this point, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its conduct. *Id.* If the defendant meets this requirement, the burden shifts back to the plaintiff to demonstrate, once again by a preponderance of the evidence, that the reasons proffered by the defendant are actually a pretext for discrimination. *Id.*

A plaintiff can establish a prima facie case for retaliation by presenting evidence that: 1) he engaged in a statutorily protected activity; 2) his employer took a materially adverse action against him; and 3) a causal connection exists between the employee's activity and the employer's adverse action. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). A materially adverse action is one which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v White*, 126 S.Ct. 2405, 2415 (2006) (internal citations omitted). A causal connection can be inferred if the statutorily protected activity immediately precedes the adverse action, however, as the events get further apart in time, an inference of causation weakens. *Mullin v. Gettinger*, 450

9

F.3d 280, 285 (7th Cir. 2006); *Oest v. Ill. Dept. Of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001).

      IDOC concedes that Griffin's incident report of July 15, 2004 is a statutorily protected activity. However, IDOC contends that it took no materially adverse action against Griffin, and that Griffin's only evidence of causation, the temporal relationship between the filing of the incident report and IDOC's failure to correct his personnel file, is too attenuated to support an inference of causation. The Court need not reach the question of whether four months is too great a time lapse to permit an inference of causation, because Griffin has not shown that IDOC took any materially adverse action toward him.

      While it may be that a delay by an employer in updating an employee's personnel file to reflect that he had resigned rather than been fired would constitute a materially adverse action, Griffin offers no evidence that there was any such delay. Under the terms of the negotiated agreement, once Griffin submitted his written resignation, IDOC would purge his employment files of any indication that he had been fired. Griffin fulfilled his part of the agreement, submitting his written resignation November 24, 2004. A little over a week later, Griffin requested that IDOC redo his background and employment history check in light of his resignation. By January 28, 2005 IDOC was actively working on the requested review. By February 1, 2005 IDOC had determined that a position with IYC - Harrisburg would not constitute a violation of Griffin's agreement not to seek re-employment with IDOC. All told, seven weeks elapsed between Griffin's request for reconsideration, and IDOC's approval for him to begin working for IYC - Harrisburg. Seven weeks from request to approval for an entity as large as IDOC, especially when the request came during the holiday season, is not inherently too

great a delay. Further, Griffin presents no evidence that a seven week turnaround is out of line with IDOC's normal turnaround time for such requests. Consequently, there is no evidence from which a reasonable jury could find that IDOC delayed in updating or releasing Griffin's personnel file. Therefore, Griffin has failed to show that IDOC took any adverse action against him. As such, he has failed to state a prima facie case of retaliation. Accordingly, IDOC is entitled to summary judgment on this claim.

## CONCLUSION

In conclusion, none of Griffin's claims have survived summary judgment. Therefore, IDOC's Motion for Summary Judgment as to the Claims Made by Plaintiff Eric Griffin (Doc. 31) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: December 11, 2007**

                                           s/ J. Phil Gilbert
                                           **J. PHIL GILBERT**
                                           **DISTRICT JUDGE**