UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES PRATT, CARLA MURRAY, and ERIC GRIFFIN,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS and TERRY MCCANN, individually,<br><br>Defendants. | Case No. 06-cv-847-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Illinois Department of Corrections (IDOC) as to the claims made by Plaintiff James Pratt (Pratt) (Doc. 30)[1]. Pratt has responded to the motion (Doc. 36) and IDOC has replied to that response (Doc. 47). Pratt alleges that IDOC, his former employer, is liable under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, for racial discrimination and for retaliation.[2] IDOC contends that one of Pratt's claims is time barred and that Pratt cannot establish a case for

---

[1] IDOC filed three separate summary judgment motions in this case, one addressed to each Plaintiff's claims. In ruling on each of the motions, the Court has been careful to confine its consideration to the evidence presented in connection with that particular motion and not to other evidence presented in connection with the other two motions, even if such evidence would have been relevant to the motion at hand. To the extent that the Court's rulings are inconsistent, that inconsistency is a product of the different evidence presented by the parties in connection with each motion and not by an improper application of the law.

[2] The Court construes this case as not asserting a "pattern-or-practice" Title VII cause of action. Although the Plaintiff's response to the summary judgment motion referred in passing to a "pattern-or-practice" theory, it analyzes this case as if it asserted only individual claims, confirming that he does not intend to assert such a claim.

1

racial discrimination or for retaliation. For the following reasons, the Court **GRANTS** the Motion.

## BACKGROUND

### I. Standard for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996). The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris, Inc.,* 216 F.3d 596 (7th Cir. 2000). Mere assertions of a factual dispute unsupported by probative evidence will not

prevent summary judgment. *Anderson,* 477 U.S. at 248-250.

**II.     Facts**

Taken in the light most favorable to Pratt, the evidence establishes the following facts.

**A.      IDOC's Racial Discrimination Policy**

Pratt, an African American, worked as a corrections officer (CO) at Shawnee Correctional Center (Shawnee), a medium security State facility operated and maintained by IDOC in Massac County, Illinois.  At all relevant times, IDOC had a written policy regarding racial discrimination and retaliation, Administrative Directive (A.D.) 03.01.307.  As of March 1, 2000, that policy prohibited discrimination or harassment based on a person's race or color.  It defined harassment as:

> verbal or physical conduct that denigrates or shows hostility or aversion toward an individual . . . because of race. . ., and that has the purpose or effect of:
> 1.      Creating an intimidating, hostile, or offensive working environment;
> 2.      Unreasonably interfering with an individual's work performance; or
> 3.      Otherwise adversely affecting an individual's employment opportunities.

A.D. 03.01.037 § II.E.  The policy applied to the treatment of both employees and prisoners of the facility.  The policy forbid engaging in or condoning racial discrimination or harassment, and obligated supervisors to "address[] any observed or reported incident of discrimination or harassment as a serious form of employee misconduct." *Id*. at § II.G.3.  It also required an employee who witnessed or was aware of discriminatory or harassing behavior to report it in an incident report. *Id*. at § II.H.3.  Wardens at Shawnee were required to work within the policy's guidelines.  Additionally, Wardens were instructed to contact the Office of Affirmative Action if they ever became aware of racial harassment issues.

3

## B. Pratt's Employment

Pratt worked as a CO at Shawnee from 1998 until 2006. On or about June 28, 2003, Pratt observed Sergeant Herbert L. Garris (Garris) using excessive force against an inmate. Pratt testified at a disciplinary hearing against Garris regarding the incident. He was pressured by Sergeant Donald O'Neal (O'Neal) to change his testimony, but he refused to do so. Garris was terminated from employment with IDOC and "locked out" of the Shawnee facility. IDOC investigated O'Neal's conduct, and he was given a written reprimand.

Prior to testifying against Garris, Pratt had observed some racially offensive things within his workplace. He overheard at least one co-worker use racially offensive language about inmates. Additionally, Pratt observed that Randall Adams, vice president of the union which represented Pratt at Shawnee, and his wife, Billy Adams, a CO at Shawnee, had state-issued licence plates reading "W Pride 1," "3KMan," and "3KWoman." The Secretary of State's office determined that the plates were racially offensive and revoked them  However, IDOC never disciplined the Adams for having or displaying the plates, even though IDOC was aware that some employees had complained about them. Pratt did not file any complaints with IDOC about the license plates or the offensive language at the time.

After Garris was fired, the work environment for Pratt at Shawnee deteriorated severely. Pratt began to hear from other officers that Garris was making threats against him and using racially derogatory language, such as "nigger" in reference to him and others. Pratt also felt that the attitudes of some of his coworkers towards him had shifted because he had testified against a fellow officer. He heard from some coworkers that other coworkers were calling him names like "nigger" behind his back. He began to feel harassed and unsafe. On March 13, 2004, Pratt

4

wrote a letter to Dennis Cooper (Cooper), Shawnee's Chief of Staff, in which he complained of being "the target of racial slurs, and what I feel to be threats." Pratt added that the abuse was not solely a result of his testimony against Garris; "it started the moment I transferred to Shawnee." Pratt told Cooper that others who witnessed Garris using excessive force but did not testify against Garris were treated better by IDOC than he was, even though he had done the right thing in coming forward and reporting the incident. In reply, Cooper merely directed Pratt to follow the procedures for reporting racial discrimination and harassment outlined in AD 03.01.037 if he felt such reporting was warranted.

Pratt wrote repeated incident reports outlining the threats from Garris that were being relayed to him by other Shawnee personnel. An investigative report filed by Illinois State Police Trooper Charlie Jones stated that Pratt indicated he was concerned for his safety, and requested transfer to the Illinois Youth Camp in Murphysboro (IYC - Murphysboro). In reality, Pratt never made any such request. On March 29, 2004, IDOC detailed (that is, temporarily assigned) Pratt to IYC - Murphysboro. IDOC told Pratt it was detailing him because it was concerned for his personal safety. Pratt was unhappy about the detail. He had been working double shifts at Shawnee, but was ineligible for overtime at IYC - Murphysboro. In addition, Pratt had received free lunches at Shawnee, but not at IYC -Murphysboro. To make matters worse, Pratt felt that the animosity of his coworkers that had plagued him at Shawnee continued at IYC - Murphysboro. Pratt requested to return to work at Shawnee; after a month at IYC - Murphysboro, he did. On May 10, 2004, Pratt was detailed to Big Muddy, another IDOC institution. Pratt was informed that if he wished the transfer to be permanent, he would have to write out a hardship transfer request. Pratt explained that he did not wish to be permanently

transferred to Big Muddy.  After four days, he returned to work at Shawnee.  Pratt filed charges with the EEOC on April 13, 2005, alleging racial discrimination and retaliation for the letter he wrote to Cooper.  Pratt has exhausted all administrative remedies, and brought the instant suit within 90 days of receiving his right to sue letter from the EEOC.

After filing his EEOC complaint, Pratt injured his knee while at work at Shawnee.  The injury occurred in September 2005.  When his worker's compensation leave ran up in April, 2006, Pratt went to Lisa Cunningham (Cunningham), Human Resources Manager at Shawnee, to fill out a request for non-service connected disability leave.  While he was there, Pratt requested a light duty assignment.  Cunningham gave Pratt no paperwork to formalize his request for light duty work.  Instead she told him that he did not qualify for a light duty assignment.  Light duty assignments are given only on the recommendation of a physician and with a prognosis of recovery within 90 days.  Cunningham never informed Pratt as to how to obtain such a recommendation and prognosis, nor gave him any paperwork to assist him in qualifying for a light duty assignment.  Cunningham told Pratt he might be eligible for an alternative work program available to state personnel who are permanently disabled from performing their current jobs.  She told him that once his non-service connected disability leave was approved, he would receive a packet from the central personnel office in Springfield outlining how to apply for that program.  Pratt resigned before his non-service connected leave paperwork was finalized.  Pratt never received any packet containing information on the alternative work program before he resigned, despite repeatedly asking Cunningham for it.

**ANALYSIS**[3]

Title VII prohibits discrimination on the basis of race: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race . . . ." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against an employee who files an employment discrimination complaint. "It is also an unlawful employment action for an employer to discriminate against any of his employees. . . because [the employee] has opposed any practice made an unlawful employment practice by this [subchapter], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this [subchapter]." 42 U.S.C.A. § 2000e-3(a). Claims must be filed in an EEOC complaint within 300 days of the act complained of in order to be actionable under Title VII. 29 C.F.R. § 160.13; *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Pratt has presented three claims: 1) because of his race, he was subjected to a work environment that was so hostile that it altered the conditions of his employment; 2) he was detailed to IYC - Murphysboro and Big Muddy in retaliation for his letter to Cooper alleging

---

[3]Plaintiff's counsel seems to be under the impression that the Court is familiar with the background, history, facts and relevant law of this case. Counsel has neglected to appraise the Court of basic facts, and has misconstrued a number of facts. Moreover, counsel has failed to apply the facts of the case to the law she has cited. The Court must, once again, remind counsel that it is not its job to do counsel's work of organizing or formulating a party's arguments, *United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999), nor is it the Court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F. 3d 560, 562 (7th Cir. 1996). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

racial discrimination, and 3) he was denied light duty work in retaliation for filing his EEOC complaint of April 2005 resulting in his constructive discharge. The Court will examine each of the claims in turn.

I.      **Hostile Environment**

Pratt claims that he suffered racial discrimination in the form of a hostile work environment in violation of Title VII.

> To survive a summary-judgment motion, an employee alleging racial harassment must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.

*Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). If the harassment comes from the employee's supervisor, the employer is strictly liable subject to an affirmative defense. *Id*. If the employee is harassed by a coworker, the employee must show that the employer has been negligent in either discovering or remedying the harassment. *Id.*

There is little question that Pratt's work environment at Shawnee became hostile after he testified against Garris. He was subjected to harassment and threats to his personal safety such that he was eventually, although temporarily, transferred out of Shawnee. The real issue is whether the hostile environment was due to Pratt's race, as required in order to maintain a Title VII action, or was due to the fact that he testified against a fellow officer resulting in that officer's dismissal.

No reasonable trier of fact could find that the harassment to which Pratt was subject was due to his race. Although Pratt, in his letter to Cooper, mentions in passing that he was subject to a hostile environment "from the moment I transferred to Shawnee", the brunt of his complaint

to Cooper is that he is being treated badly for having acted honorably. This is also the brunt of his deposition testimony, and it is the conclusion that the other evidence supports.

Additionally, while there is no question that Garris's harassment and threats had a blatant racial overtone, by the time he uttered such slurs and threats, he was no longer employed by IDOC. As such, it is unclear whether there is any basis for employer liability. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811-812 (assuming without deciding that an employer may be held liable under Title VII for failing to adequately protect an employee from harassment by an independent contractor). Assuming that IDOC did have an obligation to protect Pratt from Garris's threats and harassment, it met its obligation by detailing him to other facilities. Although, as will be addressed below, Pratt was unhappy about the detail assignments, under the circumstances, it is not clear that IDOC could have taken any other measures to protect Pratt from Garris, given that Garris no longer worked for IDOC.

In sum, Pratt has not established either that he was subject to a hostile work environment because of his race, or that the racial harassment he did suffer can be imputed to IDOC. As such, IDOC is entitled to summary judgment on this claim.

## II. Detail Assignments as Retaliation

Pratt also alleges that he was detailed to IYC - Murphysboro and Big Muddy in retaliation for his letter to Cooper in which he complained of being racially harassed. As an initial matter, IDOC contends that Pratt's complaints as to his detail assignments are time barred, as the latter of the two details occurred 338 days prior to the filing of his EEOC complaint. Claims must be filed with the EEOC within 300 days of the act complained of in order to be actionable under Title VII. 29 C.F.R. § 160.13; *National R.R. Passenger Corp. v. Morgan*, 536

9

U.S. 101, 115 (2002). Pratt counters that neither of the detail assignments were a "discrete act" actionable on its own, but must instead be considered as part of "a series of separate acts that collectively constitute one 'unlawful employment practice'" and so they are not barred under the *Morgan* doctrine. He gives the Court no indication of what the other acts in this "series" might be. As such, his claim is time barred. At any rate, even assuming the complaint about the detail assignments was not time barred, Pratt still could not prevail.

An employer is prohibited by Title VII from discriminating against any employee "because he has opposed any practice made an unlawful employment practice" by the statute. 42 U.S.C. § 2000e-3(a). The plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If he is successful in establishing a prima facie case, he establishes a presumption of discrimination. *Id*. At this point, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its conduct. *Id.* If the defendant meets this requirement, the burden shifts back to the plaintiff to demonstrate, once again by a preponderance of the evidence, that the reasons proffered by the defendant are actually a pretext for discrimination. *Id.*

A plaintiff can establish a prima facie case for retaliation by presenting evidence that: 1) he engaged in a statutorily protected activity; 2) his employer took a materially adverse action against him; and 3) a causal connection exists between the employee's activity and the employer's adverse action. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007).

Assuming that Pratt's letter to Cooper constituted a complaint about racial discrimination or harassment, Pratt must establish that his detail assignments to IYC - Murphysboro and Big

10

Muddy was an adverse employment action. He cannot.

Not everything that makes an employee unhappy constitutes an adverse employment action. *Haywood v. Lucent Tech, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). A materially adverse action is one which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v White*, 126 S.Ct. 2405, 2415 (2006) (internal citations omitted). Here, Pratt argues that, because he went from working double shifts at Shawnee to being ineligible for overtime at IYC -Murphysboro and because he could no longer receive free lunches, his detail assignment to IYC - Murphysboro was materially adverse. The loss of free lunches is simply too minor an inconvenience to deter other reasonable workers from making or supporting a charge of discrimination. As for no longer having to work overtime, although Pratt regarded that as a negative consequence of the assignment, it is not clear that other reasonable workers would have considered it a negative at all.[4] Therefore, Pratt has not shown that his detail assignments constituted an adverse employment action.

Additionally, Pratt cannot show that he was given the detail assignments in retaliation for his letter to Cooper and not for the legitimate, non-discriminatory purpose of protecting his personal safety. IDOC told Pratt it was detailing him because of concerns for his safety. Pratt had complained that he felt unsafe at Shawnee. Furthermore Trooper Jones's report indicated that he wished to be transferred to IYC - Murphysboro. Pratt has presented no evidence from which a reasonable jury could conclude that IDOC's stated reason for the detail was actually a

---

[4]Purely by way of illustration, the Court points out that one of Pratt's co-Plaintiffs complained of being denied the opportunity to go home early when her regular shifts were sufficiently staffed.

pretext for retaliation.[5] For the above stated reasons, IDOC is entitled to summary judgment on this claim.

## III.   Constructive Discharge

Pratt claims that when IDOC denied him a light duty assignment it constructively discharged him. This constructive discharge was in retaliation for Pratt's EEOC complaint filed the previous year.

Once again, a plaintiff can establish a prima facie case for retaliation by presenting evidence that: 1) he engaged in a statutorily protected activity; 2) his employer took a materially adverse action against him; and 3) a causal connection exists between the employee's activity and the employer's adverse action. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007).

IDOC concedes that the filing of an EEOC complaint is a protected activity under Title VII. Additionally, constructive discharge is a materially adverse employment action. *E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). However, in order "to demonstrate constructive discharge, the plaintiff must show that []he was forced to resign because [his] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id*. Pratt has not made such a showing. He has not even attempted to show that the denial of light duty made his working conditions unbearable, or that his working conditions would have been unbearable had he returned to work absent a light duty assignment. He has presented no evidence that he even qualified for a light duty assignment. Furthermore, he has

---

[5]At this point, Pratt's brief becomes contradictory, simultaneously arguing that Pratt felt unsafe at Shawnee, but that IDOC had no reason to believe that he was unsafe at Shawnee.

not shown that the alternatives offered him by IDOC, namely taking non-service connected leave or taking part in the alternative work program amounted to "unbearable working conditions." It is true that Pratt was never granted non-service connected leave or admitted to the alternative work program, but the evidence shows that this is because Pratt resigned before his paperwork had processed. Simply put, Pratt cannot meet the high standard of showing that conditions at Shawnee had become so unbearable for him that a reasonable person in his position would have felt compelled to quit. Therefore, his constructive discharge claim must fail. IDOC is entitled to summary judgment on this claim.

## CONCLUSION

In conclusion, none of Pratt's claims have survived summary judgment. Therefore, the Court **GRANTS** IDOC's Motion for Summary Judgment as to the Claims Made by Plaintiff James Pratt (Doc. 30). The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: December 11, 2007**

                                                   s/ J. Phil Gilbert
                                                   **J. PHIL GILBERT**
                                                   **DISTRICT JUDGE**